UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JEFFREY P. CANEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:13 CV 2 PPS |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Jeffrey Canen seeks review of the Social Security Administration's (SSA) decision to deny his application for disability insurance benefits. Canen worked construction for decades until a series of degenerative health problems took their toll on his back, shoulder and knees. He applied for disability benefits in 2010, claiming that he became disabled in November 2009. After a hearing, the ALJ found that Canen hadn't become disabled until July 14, 2010, seven months after his date last insured, rendering him ineligible for benefits. On appeal, Canen claims that the ALJ erred by not consulting with a medical advisor before determining the onset date of his disability. I agree. Therefore, the matter is **REMANDED** back to the ALJ for a redetermination of the onset date.

## BACKGROUND

Jeffrey Canen labored as an ironworker in the construction industry for over thirty-five years. His career ended, and his present difficulties began, on March 23, 2005 when he fell thirty feet to the ground while dismantling an elevator at a worksite. (R. 65.) Canen fractured his right shoulder - specifically the glenoid, or socket, of the shoulder joint - during the fall. (*Id.*; R. 277.) Although his shoulder did not require surgery, Canen underwent months of physical therapy and has never held a job since – other than in prison but more on that in a moment. (R. 47, 249-250.)

While he was recovering, Canen also complained of back pain. An MRI revealed that he was suffering from an unrelated degenerative disc disease that was causing a stenosis, or narrowing, of the thecal sac (the membrane that surrounds the spinal cord) as well as a displaced vertebrae. (R. 248.) By the time Canen completed physical therapy, his workers compensation physician, Dr. McLimore, determined that Canen's back pain could be controlled through exercise, over-the-counter pain medication, and transcutaneous electrical nerve stimulation. (R. 250.)

As part of his workers compensation claim, Canen underwent a functional capacity evaluation (FCE) in September 2005 with physical therapist Marinanne Fleming. (R. 262.) Fleming opined that Canen was capable of performing at the "light work" level, meaning "exerting up to 20 pounds rarely/occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly." (*Id*.) Dr. McLimore relied on the FCE to impose the permanent restrictions on Canen: no lifting greater than 25-35 pounds occasionally, no pushing or pulling greater than 50 pounds occasionally, and no repetitive lifting, twisting or bending. (R. 250.) Osteopath Todd Midla evaluated Canen in March 2006. Midla examined Canen's shoulder and back, and estimated that Canen's whole person impairment rating was 15%. (R. 278.) Midla opined that Canen's shoulder injury was "quiescent," meaning joint replacement wasn't necessary at the time, but might be required down the road. (*Id.*)

As alluded to above, in September 2006, Canen went to prison to begin serving a ten year sentence for dealing methamphetamine and cocaine. He ultimately served four years, securing release in April 2010. (R. 45, 48.) While in prison, Canen had several jobs, including working at a weld shop and a wastewater facility. (R. 48.) But as his health declined close to his release date, Canen was moved to a sedentary job (library clerk) which allowed him time to rest during the day. (R. 66-67.)

While in prison, Canen frequently visited the medical staff, receiving treatment for temporary ailments like allergies and ear infections, as well as for chronic problems like his persistent shoulder and back pain. (R. 25, 302-337.) His pain was treated with over-the-counter medication. (R. 297, 300, 303, 307.) In light of his health problems, Canen received a bottom bunk pass and a ten-pound lifting restriction. (*Id*.)

Beginning in August 2008, Canen's medical records show he developed two new problems. First, Canen began taking a prescribed anti-depressant. (R. 319.) That same month, Canen began to complain of pain in his knees. (R. 319, 322.) Canen had a history of arthritis pain and had had his knees scoped prior to prison, but, starting in August, his knees started to exhibit swelling and soreness. (R. 299, 311, 319, 322.) Canen claims the pain worsened significantly when he twisted his left knee while cutting rebar in the prison weld shop on October 1, 2009. (R. 26, 48.) Records show that he was treated for left knee pain and swelling five days later. (R. 326.) The attending nurse wrote that the visit was attributable to an "[i]njury here at DOC." (*Id*.) On December 9, 2009, he again sought treatment for pain in his left knee. The treating nurse wrote that the pain was caused by a recent injury, namely "[t]wisted knee on 10/1/2009." (R. 341.) He was treated with over-the-counter pain medication on both occasions. (R. 327, 342.) The pain in Canen's left knee persisted after he was released from prison. A June 2010 MRI showed evidence of arthritis, and Canen's doctor prescribed anti-inflammatories and exercise to help control symptoms. (R. 28, 377-78, 383.) The pain continued to worsen until Canen underwent knee replacement surgery in February 2011. (R. 521.)

Canen was released from prison in April 2010. That month, Dr. Whitley, a non-examining state agency physician, reviewed Canen's records. He found that Canen had an inoperable broken shoulder, degenerative discs in his spine, a knee injury, depression, arthritis and diabetes, but

3

ultimately concluded that these were not severe impairments. (R. 361.) Dr. Neal, another non-examining state agency physician, affirmed Dr. Whitley's assessment on July 29, 2010. (R. 394-395.)

After his release from prison, Canen sought treatment for depression and memory loss in addition to his above-mentioned treatment for joint pain. (R. 596-574.) He was diagnosed with depression and prescribed anti-depressants beginning in December 2010. (R. 570.) During his visits to his clinic, Canen regularly consulted Nurse Practitioner Cheryl Sabans and Social Worker Randall Pickering. On July 14, 2010, Sabans and Pickering opined that Canen was "permanently disabled by the synergistic combination of physical and mental conditions which afflict him," including degenerative disc disease, pancreatitis, Type II diabetes, arthritis, and left leg edema. (R. 289-392.) They were particularly concerned that Canen was showing symptoms of an undiagnosed brain disorder, including memory loss and episodes of unresponsiveness. (R. 392.) Canen's treating physician, Dr. French, came to the same conclusion in September 2010, opining that Canen was disabled due to "severe peripheral neuropathy, right shoulder and low back pain, depression, and Type II diabetes." (R. 415.)

Canen was seen by a consulting physician, Dr. Duan Pierce, on September 7, 2010, who found Canen was capable of working with some limitations. (R. 396-398.) Dr. Pierce observed that Canen had swelling and tenderness in the left knee and right shoulder, as well as a reduced range of motion in those joints. (R. 398.) He found that although Canen could probably benefit from physical therapy, he was still capable of lifting ten pounds occasionally and standing for up to three hours at a time. (*Id*.) Likewise, Dr. Neal performed a Residual Functional Capacity Assessment around the same time. He found that Canen was capable of sedentary work with postural and manipulative limitations. And that Canen could occasionally lift ten pounds, stand or

4

walk at least two hours in an eight-hour workday, and sit about six hours in an eight-hour workday. (R. 401-402.)

On February 23, 2010, Canen protectively filed a Title II application for disability insurance benefits, alleging he had been disabled since March 23, 2005. (R. 21.) He also filed an application for supplemental security income alleging the same March 23 onset date. (*Id.*) Both applications were denied (*Id.*) Canen appealed and requested a hearing, which he testified at along with an impartial vocational expert. At the hearing, Canen's attorney amended the alleged onset of disability date to November 1, 2009. (*Id.*)

The ALJ rendered a partially favorable decision, finding Canen was disabled beginning on July 14, 2010. (R. 32.) The ALJ found that, as of that date, Canen had the residual functional capacity to do sedentary work, but, given his age, education and experience, there were no jobs in the national economy he could perform. (R. 28.) Canen's date last insured for disability benefits was December 31, 2009. So, as a result of the ALJ's decision, Canen's application for supplemental security income was granted, but his application for disability insurance benefits was denied. The Appeals Counsel denied Canen's Request for Review and this appeal followed.

## II. DISCUSSION

Canen's primary argument on appeal is that the ALJ erred by not calling upon a medical advisor to determine his disability onset date. In cases like this one where the claimant challenges the disability onset date, my role is limited to deciding whether the ALJ's chosen onset date is supported by substantial evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1279 (7th Cir. 1989). Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); *see also Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

Often, it is easy to determine the disability onset date because the claimant's disability stems directly from some traumatic event, like a car accident. It's harder to pinpoint the date when the claimant, as here, suffers from progressive conditions that gradually worsen over time. In these cases Social Security Ruling 83-20 sets out the procedure the ALJ is to follow. When determining a claimant's disability onset date, the ALJ must consider (1) the claimants allegations as to the onset date; (2) the date that the claimant left work; and (3) the medical evidence of onset. *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999) *citing* SSR 83-20. The medical evidence is the most important factor and the chosen onset date must be consistent with it. *Id.*

If medical evidence does not reveal an exact onset date, the ALJ has to infer one. SSR 83-20; *Lichter v. Bowen*, 814 F.2d 430, 434 (7th Cir. 1987). When the ALJ has to infer an onset date, SSR 83-20 requires that the ALJ consult a medical advisor. *Lichter*, 814 F.2d at 434; *Gutka v. Apfel*, 54 F. Supp. 2d. 783, 787 (N.D. Ill. 1999) (SSR 83-20 "requires an ALJ to call upon a medical advisor in cases where the onset of a disability cannot be affixed to a particular date and must consequently be inferred."). This consultation is unnecessary when the medical record is complete enough to unambiguously fix the correct onset date. *See Henderson*, 179 F.3d at 513. So the critical question in this case is whether the medical evidence was sufficient to establish the precise onset date of July 14, 2010 and render the consultation with the medical advisor unnecessary. I find that it was not.

In her opinion, the ALJ first found that Canen was not disabled before July 14, 2010 because, before that date, he did not have a severe impairment, meaning, an impairment or combination of impairments that would prevent him from performing basic work activities. (R. 24.) However, the ALJ did find that prior to 2010, Canen already had several of the impairments

that would eventually leave him disabled. (R. 24-25.) She found Canen had a history of diabetes dating to 2004. (R. 26.) He sustained a serious right shoulder fracture from the 2005 injury. (R. 24.) He had a painful degenerative disc condition that was diagnosed around 2005. (*Id.*) Finally, he had left knee pain from a progressive arthritic condition starting in 2009. (*Id.*)

The ALJ then found that Canen was disabled as of June 14, 2010 because "beginning on July 14, 2010" Canen had a severe combination of impairments, namely a left knee replacement, a right shoulder fracture, degenerative disc disease of the lumbar spine, depression, and he was post presumptive small ischemic stroke, which means that the blood supply to part of his brain had been cut off. *See* www.cedars-sinai.edu/Patients/Health-Conditions/Ischemic-Stroke.aspx; (R. 27.) The "beginning on" is doing a lot of work in that sentence as these impairments either existed well before, or developed after, the July 14, 2010 date. For example, Canen's knee wasn't replaced until February 2011 (R. 521.) The presumed stroke didn't occur until January or February 2011. (R. 29.) Canen wasn't diagnosed with depression until December 2010, although the record shows treatment for depression in August 2009, well before the July 2010 date. (R. 319, 570.) His diabetes dates from 2004, and his back and shoulder pain from 2005. (R. 25-26.) The arthritis that led to the knee replacement began in August 2009, and was diagnosed in June 2010. (R. 319, 377-78.)

Frankly, the only evidence in the record supporting the July 14, 2010 onset date is the statement made by social worker Pickering and Nurse Sabens. They wrote that Canen was disabled due to his myriad physical impairments and speculated that he was showing symptoms of an undiagnosed brain disorder. (R. 392.) This might have provided solid medical evidence for the July onset date, but for the fact that the ALJ rightly gave the statement little weight as neither Pickering nor Sabens are an acceptable medical source according to the Social Security

7

regulations. (R. 29.)

As the above makes plain, this is a case for calling a medical advisor. The ALJ determined that Canen had a host of degenerative problems that gradually increased in number and intensity until, at some point, he became disabled. There was nothing solid in the medical record pointing to any one date as the tipping point where Canen's preexisting medical conditions became disabling, so the ALJ had to infer the date from the records. In these situations SSR 83-20 requires consultation with a medical advisor. *See Lewis v. Astrue*, 518 F. Supp. 2d 1031, 1040-41 (7th Cir. 2007) (ALJ erred by not consulting medical advisor when medical records prior to selected onset date indicated the same cluster of symptoms and diagnoses as those records after the onset date); *Gutka*, 54 F. Supp. 2d at 787 (ALJ erred by failing to involve a medical advisor when medical records did not establish the onset date of the claimant's depression); *Williams v. Chater*, No. 96 C 1833, 1996 WL 473466, at *6 (N.D. Ill. Aug. 16, 1996) (ALJ erred by not consulting with a medical advisor before determining the onset date of a claimant with degenerative neuromuscular disorders).

The Secretary argues that the medical record was so complete that consultation was unnecessary. Canen had been treated by doctors regularly and had had his functional capacity evaluated several times, including in April 2010 when the state examining physician found insufficient evidence of disability. The record was substantial, but it was not complete because it did not point to an onset date, forcing the ALJ to infer one. There was evidence in the record from which she could have inferred an earlier date, so the ALJ's failure to consult the medical advisor before choosing the onset date was an error and necessitates a remand of this matter. *Rice v. Apfel*, 8 F. Supp. 2d 769, 774 (N.D. Ill. 1998).

### III. CONCLUSION

Therefore, and for the reasons set forth herein, the matter is **REMANDED** back to the agency for further proceedings consistent with this opinion.

**SO ORDERED**.

ENTERED: November 8, 2013

                                                     s/ Philip P. Simon
                                                    PHILIP P. SIMON, CHIEF JUDGE
                                                    UNITED STATES DISTRICT COURT